# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 97-KA-01407-COA

**KENNY RAY SMITH**                                                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                                 **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/1997 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID M. RATCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | JEANNINE T. PACIFIC |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF DRIVE-BY SHOOTING; SENTENCED TO TWENTY YEARS IN THE CUSTODY OF MDOC |
| DISPOSITION: | AFFIRMED - 03/23/1999 |
| MOTION FOR REHEARING FILED: | 4/2/99 |
| CERTIORARI FILED: | July 29, 1999 |
| MANDATE ISSUED: | |

BEFORE BRIDGES, C.J., COLEMAN, IRVING, AND PAYNE, JJ.

PAYNE, J., FOR THE COURT:

### PROCEDURAL POSTURE AND ISSUES PRESENTED

¶1. This case is before the Court challenging the conviction of one count of drive-by shooting and sentence of twenty years incarceration in the custody of the Mississippi Department of Corrections. The appellant, Kenny Smith, unsuccessfully sought relief in the form of a JNOV at the trial level, which was denied. From that denial, Kenny timely filed this appeal raising the following seven issues: whether the verdict was against the overwhelming weight of the evidence, whether the trial court erred in denying Kenny's motion to quash the indictment because of inadequate language establishing the crime charged, whether the trial court erred in failing to suppress the written and video statements of co-defendant Donald Bernard Moore under MRE 801 and MRE 802, whether the trial court erred in failing to suppress Kenny's statements against co-defendant Donald Bernard Moore under MRE 801 and MRE 802, whether the trial court erred in not

allowing Kenny a continuance after the state moved for severance of co-defendant Michael Waters, and whether the trial court erred in granting State's Jury Instructions 1 and 2.

¶2. Upon review of the briefs and applicable precedents, we overrule each of Kenny's suggestions of error. Accordingly, we affirm the conviction and sentence in this case.

## FACTS

¶3. On December 29, 1996, Kenny had a verbal altercation with his apparent girlfriend, Melonie, at his aunt's home. After demanding that Melonie return some jewelry Kenny had given her, Kenny went into the house. Melonie came on the porch of the house, where she and Kenny engaged in more verbal jousting. Melonie left the porch area and proceeded to her car; Kenny pursued her, slamming the car door hard enough to dent it. Later, Barry Ulmer, Melonie's brother, confronted Kenny about denting the car and threatened him with a 9 mm pistol.

¶4. Around midday, after this confrontation with Barry, Kenny, along with Donald Moore and Michael Waters, armed themselves and went to Barry's home in a white Chevrolet Caprice so that Kenny could fist fight Barry. Kenny told police that Waters was driving the car, Moore was armed with an AK-47 and clip and a .25 caliber pistol with two rounds, and Kenny had a .22 caliber handgun with three rounds. When the trio approached Barry's home, Kenny maintains that Moore fired the first shot, and he also fired his gun. The three then fled the scene and were later apprehended by the Heidelberg Police Department. At Kenny's trial, Gregory and Fitzgerald Johnson, both neighbors of the Ulmers, testified that he saw Kenny, Moore, and Waters in the white car and heard the gun shots ring out from the car in the direction of the Ulmer home on the day and at the approximate time of the shooting in question. During the assault on the home, sixty-six year old Silas Ulmer, the grandfather of Barry Ulmer, was shot in the hip, and the bullet lodged in his abdomen, requiring removal of part of the victim's intestines.

¶5. At the time of Kenny's apprehension, along with Moore and Waters in the white car identified by the eyewitnesses to the shooting, law enforcement officers recovered a box of .25 caliber ammunition, an AK-47 rifle, a .22 caliber revolver, and a .25 caliber semi-automatic handgun. Physical evidence collected at the scene and tested against the weapons seized at the time of the arrest established that those weapons were used in the shooting.

## DISCUSSION AND ANALYSIS

## I. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE

¶6. It is well established that matters regarding the weight of evidence are to be resolved by the jury. *Neal v. State*, 451 So. 2d 743, 758 (Miss. 1984). As such, our scope of review is limited in considering challenges to the weight of the evidence. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice. *Eakes v. State*, 665 So. 2d 852, 872 (Miss. 1995); *Flowers v. State,* 601 So. 2d 828, 833 (Miss. 1992); *McFee v. State*, 511 So. 2d 130, 133-34 (Miss. 1987). We cannot say that the evidence was such that allowing a conviction to stand on this evidence would result in an unconscionable injustice. Thus, there is no error in

this regard.

## II. WHETHER THE TRIAL COURT ERRED IN DENYING KENNY'S MOTION TO QUASH THE INDICTMENT BECAUSE OF INADEQUATE LANGUAGE ESTABLISHING THE CRIME CHARGED

¶7. Kenny's next assignment of error alleges the trial court erred in not quashing the indictment because it lacked necessary language. Specifically, Kenny maintains that the indictment's omission of the exact statutory language rendered it fatally defective. The pertinent part of the drive-by shooting statute reads: "[a] person is guilty of a drive-by shooting if he attempts, other than for lawful self-defense, to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life by discharging a firearm while in or on a vehicle." Miss. Code Ann. § 97-3-109(1) (Supp. 1998). The pertinent part of the indictment read as follows: "unlawfully, wilfully, and feloniously did knowingly cause serious bodily injury to Silas Ulmer by discharging a firearm while in a vehicle and thus striking the said Silas Ulmer, with bullets fired from said firearm. . . ."

¶8. The seven items of URCCC 7.06 are: the name of the accused; the date on which the indictment was filed in each court; a statement that the prosecution is brought in the name and by the authority of the State of Mississippi; the county and judicial district in which the indictment is brought; the date, and if applicable the time, on which the offense was alleged to be committed; however, failure to state the correct date shall not render the indictment insufficient; the signature of the foreman of the grand jury issuing it; and the words "against the peace and dignity of the state." Further, the rule requires that an indictment provide "a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation against him." *Gatlin v. State*, 95-KA-00650-SCT(¶ 32) (Miss. 1998) (citing *Holloman v. State*, 656 So.2d 1134, 1139 (Miss. 1995)).

¶9. The indictment brought against Kenny charged him with violating the drive-by shooting statute. The mandated elements of URCCC 7.06 were provided in the charging instrument. There was no evidence that the shooting was for lawful self-defense, and the language referencing the shooting be done under circumstances manifesting an extreme indifference to human life is not necessary. Clearly, shooting a firearm in the direction of an occupied home demonstrate an extreme indifference to human life. Kenny was provided with sufficient notice of the charges against him in order to prepare an adequate defense. As such, we find no merit in this claim.

## III. WHETHER THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE WRITTEN AND VIDEO STATEMENTS OF CO-DEFENDANT DONALD BERNARD MOORE UNDER MRE 801 AND MRE 802

## IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO SUPPRESS KENNY'S STATEMENTS AGAINST CO-DEFENDANT DONALD BERNARD MOORE UNDER MRE 801 AND MRE 802

¶10. Kenny's next two assignments allege that the trial court erred in failing to suppress statements made by him and his co-defendant, Donald Moore, as both statements constituted hearsay. We disagree. Contrary to Kenny's contention, both he and Moore gave statements indicating that Kenny shot the .22 caliber weapon. Under the Mississippi Supreme Court rule set forth in *Seales v. State*, 495 So. 2d 475 (Miss. 1986), Donald's statement was admissible against Kenny. Both Kenny's and Donald's statements were

sufficiently similar as to material facts that their reliability was established. Further, the trial court instructed the jury that Moore's statement against Smith could not be used to establish the guilt of anyone other than the person making the statement. This assignment is not well taken and as such is overruled.

## V. WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING KENNY A CONTINUANCE AFTER THE STATE MOVED FOR SEVERANCE OF CO-DEFENDANT MICHAEL WATERS

¶11. Kenny's fifth assignment of error alleges that the trial court erred in denying him a continuance after the prosecution requested a severance of co-defendant Michael Waters case. Our seasoned precedent provides that "the decision to grant or deny a continuance is left to the sound discretion of the trial court. *Walls v. Spell*, 97-CA-00378-SCT (¶ 9) (Miss. 1998) (citing *Johnson v. State*, 631 So. 2d 185, 189 (Miss. 1994); *Wallace v. State*, 607 So. 2d 1184, 1190 (Miss. 1992); *Morris v. State*, 595 So. 2d 840, 844 (Miss. 1991); *Fisher v. State*, 532 So. 2d 992, 998 (Miss. 1988)). Further, unless we determine that a manifest injustice occurred from the denial of the continuance, this Court will not reverse. *Hatcher v. Fleeman*, 617 So. 2d 634, 639 (Miss. 1993). Finally, Miss. Code Ann. § 99-15-29 (Supp. 1998) provides that "[a] denial of the continuance shall not be ground[s] for reversal unless the . . . [reviewing court] . . . shall be satisfied that injustice resulted therefrom."

¶12. Our review of the record finds no indication that Kenny's counsel was in any manner left ill-prepared by the severance of Michael Waters' trial from that of Kenny and Donald Moore. Accordingly, finding no manifest injustice flowing from the trial court's action, we overrule this assignment of error.

## VI. WHETHER THE TRIAL COURT ERRED IN GRANTING STATE'S JURY INSTRUCTIONS 1 AND 2

¶13. Kenny's sixth and final assignment of error alleges that the trial court committed reversible error in granting of the State's Jury Instructions 1 and 2. After reviewing the instructions, we find no merit to this argument. Accordingly, we overrule this assignment of error.

¶14. The standard of review applicable to jury instructions in Mississippi is well-established. When considering a challenge to a jury instruction on appeal, we do not review jury instructions in isolation; rather, we read them as a whole to determine if the jury was properly instructed. *Burton By Bradford v. Barnett*, 615 So. 2d 580, 583 (Miss. 1993); *Taylor v. State*, 597 So. 2d 192, 195 (Miss. 1992); *Payne v. Rain Forest Nurseries, Inc.*, 540 So. 2d 35, 40 (Miss. 1989); *Byrd v. F-S Prestress, Inc.,* 464 So. 2d 63, 66 (Miss. 1985). Accordingly, specific, individual instructions that are defective do not require reversal if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law.

¶15. The instructions complained of read as follows:

S1

The Court instructs the jury that the Defendants have been charged with the crime of Drive By Shooting. If the Jury finds from the evidence, beyond a reasonable doubt, 1. that Kenny Ray Smith and Donald Bernard Moore, or either of them, on or about the 29th day of December, 1996 in the City of Laurel, Second judicial District, Jones County, Mississippi, did purposely, knowingly or recklessly; 2. discharged a firearm or firearms while said Defendants were in or on a vehicle under circumstances manifesting an extreme indifference to the value of human life by discharging said

firearm or firearms and thus striking the said Silas Ulmer, with a bullet and; 3. that said Kenny Ray Smith and Donald Bernard Moore were not acting in lawful self-defense then you shall find the Defendants, or either of them, guilty as charged. If the prosecution has failed to prove any one or more of the elements in this case beyond a reasonable doubt then you shall find the defendants, or either of them, not guilty.

S2

The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of the crime, and knowingly, wilfully, and feloniously doing an act which is an element of the crime or immediately connected with it or leading to its commission, is as much a principal as if they had with their own hand committed the whole offense; and if you believe from the evidence beyond a reasonable doubt that the defendants, Kenny Ray Smith and Donald Bernard Moore, or either of them, did willfully, unlawfully and feloniously do any act which is an element of the crime with which they are charged or immediately connected with it or leading to its commission, then and in that event, you should find the defendants, or either of them, guilty of that crime as the case may be.

As with his complaint as to the indictment, Kenny contends that State's Jury Instruction #1 did not track the statutory language. As to State's Instruction #2, Kenny maintains that instruction was an accessory instruction, allowing the jury to convict him even if they did not find that he committed every essential act of drive-by shooting.

¶16. Our review leads us to conclude that the complained of instructions, read as a whole with all of the trial court's instructions, properly set forth the applicable law in Mississippi with regard to this offense. Accordingly, we overrule Kenny's complaint in this regard.

¶17. **THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT OF CONVICTION OF DRIVE-BY SHOOTING AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST JONES COUNTY.**

**KING, P.J., DIAZ, IRVING, LEE, AND THOMAS, JJ., CONCUR. BRIDGES, J., CONCURS IN PART. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., BRIDGES AND COLEMAN, JJ.**

SOUTHWICK, J., CONCURRING

¶18. The majority rejects Smith's arguments regarding defects in the indictment. Though I agree that the issue does not require reversal, I disagree with an important part of the analysis and therefore concur for the reasons that follow.

¶19. Smith was indicted with this relevant language:

Smith . . . unlawfully, willfully and feloniously did knowingly cause serious bodily injury to Silas Ulmer by discharging a firearm while in a vehicle and thus striking the said Silas Ulmer, with bullets fired from

said firearm, in violation of Section 97-3-109 . . . .

Before trial Smith moved to quash the indictment, arguing that it improperly omitted the following language from the statute:

> attempts . . . to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life . . . .

Smith also argued that another phrase was omitted from the statute that required that the shooting not be in "lawful self defense."

¶20. In other words, Smith argues that the substance of the statute as set out in the lengthy quote is not adequately reproduced in the indictment, and secondly, that the self defense language should have been included. Analyzing this issue requires determining what has to be put in an indictment, and then comparing the requirements to the actual language.

¶21. The majority cites authority that seven matters of form must be in every indictment as set out in Uniform Circuit and County Court Rule 7.06. Those include the name of the accused, date of the indictment, date of the offense, and other matters unrelated to the elements of the offense. In addition to the formal matters, Rule 7.06 also requires that "the essential facts constituting the offense charged" be stated. There is no argument made that the seven formalistic elements are lacking. Instead, we must decide whether any facts constituting the offense are missing.

¶22. Rule 7.06 means nothing more but also nothing less than what the supreme court has declared is needed for adequate notice to an accused. The court has held that "in order to be sufficient, the indictment must contain the essential elements of the crime with which the accused is charged." *Hennington v. State*, 702 So. 2d 403, 407 (Miss. 1997). In order for an accused to know the essential facts, he must be told the facts that support each element of the offense that he is alleged to have committed.

> It is fundamental . . . that an indictment, to be effective as such, must set forth the constituent elements of a criminal offense; if the facts alleged do not constitute such an offense within the terms and meaning of the law or laws on which the accusation is based, or if the facts alleged may all be true and yet constitute no offense, the indictment is insufficient. . . . Every material fact and essential ingredient of the offense--every essential element of the offense--must be alleged with precision and certainty, or, as has been stated, every fact which is an element in a prima facie case of guilty must be stated in the indictment.

*Hennington*, 702 So. 2d at 408, quoting *Peterson v. State*, 671 So. 2d 647, 653 (Miss. 1996).

¶23. For this indictment to be sufficient, I find that it must have told Smith that he 1(a) attempted to cause serious bodily injury to another or 1(b) caused such injury, and that he did so 2) purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life 3) by discharging a firearm 4) while in or on a vehicle. The statute itself also states that the act not be in lawful self defense, a separate matter I defer addressing for the moment. The indictment must therefore allege whether there was only an attempt or that the injury actually occurred, that the accused acted with purpose or was recklessly indifferent, that there was a discharge of a firearm, and the discharge occurred while the accused was in or on a vehicle.

¶24. In the indictment Smith was accused of causing injury to Mr. Ulmer by "discharging a firearm while in a vehicle," which are three of the four elements. The intent that was alleged was diffused by a jumble of words: "unlawfully, willfully and feloniously did knowingly cause. . . ." This was adequate notice that Smith was accused of a purposeful and knowing act. However, there definitely were no explicit words regarding reckless behavior manifesting extreme indifference. Recent case law that will be reviewed below holds that an indictment does not need to allege all alternative statutory means to commit a crime. The effect of using only one set of elements in the indictment but the jury's receiving instructions on a different set is a murky problem. What is clear, though, is that the indictment is valid against a pre-trial motion to quash because it at least sets out all essential facts of one means of committing the crime.

¶25. One other omission in the indictment is alleged, namely, that the crime must not be in self defense. An indictment generally does not have to dispute a defense that could be raised. *State v. Grady,* 281 So.2d 678, 680 (Miss. 1973). I believe that this should be true even if the substantive statute as does this one includes "other than in lawful self defense" in its language. Self defense lies dormant in prosecutions for most assaultive offenses until raised by an accused. Only if the defendant presents evidence on the issue must an instruction be given to the jury on self defense. *Wadford v. State*, 385 So. 2d 951, 954 (Miss. 1980). The burden is then on the State to prove beyond a reasonable doubt that the act was not in self defense.

> The burden of proof in a criminal case never shifts from the State to the defendant. The State is required to prove every material element of the indictment beyond reasonable doubt. Likewise, the defendant is not required to prove that he acted in self-defense, and, if a reasonable doubt of his guilt arises from the evidence, including the evidence of self-defense, he must be acquitted.

*Sloan v. State,* 368 So. 2d 228, 229 (Miss. 1979). Therefore, even when the criminal statute mentions self defense, no purpose is served by requiring that the indictment do so. It is sufficient if the jury is given instructions on the defense once meaningful evidence is presented. That occurred here. The indictment was sufficient to withstand the motion to quash.

¶26. Though I find that there was no need to quash, the jury instructions went beyond the indictment's language. As already discussed, the indictment alleged that Smith "unlawfully, willfully and feloniously did knowingly cause serious bodily injury" to the victim. The jury instructions added that conviction should occur also if Smith "recklessly" "under circumstances manifesting extreme indifference to the value of human life" discharged the firearm. This addition of reckless indifference goes directly to Smith's argument that the indictment also should have said "purposely, knowing or recklessly under circumstances manifesting extreme indifference to the value of human life." The majority rejects the argument, stating that the precise words of the statute need not be repeated in the indictment. I have no disagreement with that principle. The principle is relevant, though, only if this is a dispute about a choice of words to include the elements of the offense, as opposed to the choice of words that results in omitting some elements. Was "reckless" with "manifest indifference" in the indictment but in different words, or perhaps was "reckless" not an essential element of the crime even when included in an instruction to the jury?

¶27. To answer the question we must look at the possibilities. The words in the indictment for intent were "unlawfully, willfully and feloniously did knowingly cause" the injury. "Unlawfully" and "feloniously" are not words of intent and add nothing. Only "wilfully" and "knowingly" are relevant for this discussion. The supreme court has held that the "wilful" or "knowing" commission of an act is the equivalent of intentionally committing the act. *Dorroh v. State*, 229 Miss. 315, 321, 90 So. 2d 653, 656 (1956). Specifically, the

court held that "'[i]n an indictment charging a wilful killing, it means intentionally and not by accident,'" quoting *Ousley v. State*, 154 Miss. 451, 122 So. 731, 732 (1929). The *Ousley* court had discussed these different intents in some detail:

> Appellant's position is that it is essential to a valid indictment under the statute that the word "knowingly" be used; and that neither the word "willfully" nor "unlawfully" nor "feloniously," used in the indictment involved, dispensed with the necessity of using the word "knowingly." It is not essential, in an indictment for a statutory crime, that the exact descriptive language of the statute be used. Equivalent words of substantially the same meaning as those of the statute may be substituted. Where the language used in the indictment is sufficiently specific to give notice of the act made unlawful, and exclusive enough to prevent its application to other acts, it is sufficient. The Standard Dictionary gives "intentionally" as one of the meanings of each of the words "knowingly" and "willfully." It is inconceivable that an act willfully done is not also knowingly done. No decision of our Supreme Court directly in point is cited in the briefs; but there are numerous decisions from other jurisdictions cited in the Attorney General's brief, holding that the words "knowingly" and "willfully" in criminal statutes have substantially the same meaning. None to the contrary are cited in the briefs. . . . It is synonymous with intentionally, designedly, without lawful excuse, and, therefore, not accidentally.

*Ousley,* 122 So. at 732 (citation omitted).

¶28. I read that discussion to mean that "wilful" and "knowing" are synonymous and do not include anything that occurs accidentally. *Ousely* has recently been relied upon:

> This Court has stated that "[i]t is inconceivable that an act willfully done is not also knowingly done." *Ousley v. State*, 154 Miss. 451, 122 So. 731 (1929). Stated differently, "willfully" means "knowingly." Moreover, "wilful" means nothing more than doing an act intentionally.

*Moore v. State*, 676 So. 2d 244, 246 (Miss. 1996).

¶29. Though "accidentally" and "recklessly" are not synonymous, neither involves an intentional act. Therefore, for the same reason that "wilful" and "knowing" mean the same thing as "intentional" as opposed to "accidental," I would find that they cannot mean the same thing as "reckless." This indictment simply did not charge Smith with a recklessly indifferent act.

¶30. This case is quite similar to a recent appeal regarding aggravated assault. That offense also allows the crime to be committed intentionally or instead with reckless indifference. Miss. Code Ann. § 97-3-7(2)(a) ("A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life . . . ."). The defendant was indicted for "unlawfully, feloniously, purposely and knowingly caus[ing] serious bodily injury" to the victim without referring to reckless indifference to life. *Hall v. State*, 644 So. 2d 1223, 1228 (Miss. 1994). Unlike our case, the jury instructions also were limited to the intentional committing of the crime. The defendant argued that acting "under circumstances manifesting extreme indifference to the value of human life" was an essential element of aggravated assault that had to be alleged and proven. *Id.* In essence, the defendant argued that extreme indifference to life must be proven even when the crime was intentionally -- not recklessly -- committed. The court disagreed, saying that the entire statutory phrase of "'recklessly under circumstances manifesting extreme indifference to human life' is another form of the crime" that was charged. *Id.* at 1229. Since the defendant was only tried for the

intentional crime, the reckless with indifference language was of no relevance.

¶31. The *Hall* court discussed another similar precedent. *Harbin v. State*, 478 So. 2d 796, 798 (Miss. 1985). In *Harbin* the defendant specifically argued that the wording *after* "reckless" in the statute, the "under circumstances manifesting extreme indifference," had to be in the indictment. He seemed to concede that the act was intentional and there was no discussion of the need to indict for reckless conduct. The *Harbin* court did not give the simple answer that "extreme indifference" standard was inapplicable to intentional conduct, but held that even without that language the accused was given fair notice of the charge and that formal and technical words are not necessary. *Id*. at 799. The opinion does not mention the instructions. The later *Hall* decision said this about *Harbin:*

> This Court affirmed Harbin's conviction despite the fact that the indictment only charged purposeful, intentional conduct causing serious bodily injury. If an essential element of the crime had been omitted, obviously, the indictment would have been fatally defective. By the same token, the state would have failed to prove each and every element of the crime, as required. "It is hornbook criminal law that before a conviction may stand the State must prove each and every element of the offense." *Neal v. State,* 451 So. 2d 743, 757 (Miss. 1984).

*Hall,* 644 So. 2d at 1229.

¶32. Another precedent interpreted *Harbin* as concluding that his indictment "contained all of the essential elements for the charge of aggravated assault." *Peterson*, 671 So. 2d at 654. The *Peterson* court then concluded that it had "yet to hold that the essential elements of the crime charged are not necessary to be included within the indictment." *Id.*

¶33. In my view *Hall*, *Harbin* and *Peterson* would not permit conviction under an indictment that omitted the language of recklessness, if reckless conduct indifferent to human life was included in the jury instructions. Reckless indifference to human life becomes an essential element of the crime if that is among the theories that are given to the jury. There was no need for that language to be in the *Hall* indictment because it "is another form of the crime" than the one that was prosecuted in *Hall*. However, by giving an instruction to the jury on that theory in the present case, the trial court made reckless indifference one of the forms of the crime for the jury's consideration. Smith had not been put on notice in the indictment of that possibility.

¶34. It is important -- else much of this is irrelevant -- that the State may indict for the different alternatives for committing a crime. The supreme court restated a previous holding this way:

> In *Lenoir v. State*, 237 Miss. 620, 623-624, 115 So.2d 731, 732 (1959), this Court said:
>
> It is a general rule that where a statute denounces as an offense two or more distinctive acts, things, or transactions enumerated therein in the disjunctive, the whole may be charged conjunctively and the defendant found guilty of either one.

*Wolf v. State,* 281 So. 2d 445, 447 (Miss. 1973). *Lenoir* reviewed a statute that made it a crime for a parent to "desert or wilfully neglect or refuse to provide for the support and maintenance of his or her child"

under the age of 18, but the indictment used the word "and" instead of "or" between each means of committing the offense. *Lenoir*, 115 So. 2d at 731. The threshold right to indict for each alternative means of committing an offense was not even questioned but was the starting premise.

¶35. Though I find that this recklessness alternative should have been in the indictment if the jury was to receive an instruction on it, I also find that Smith ultimately waived this issue.

¶36. Smith alleged that the indictment should have been quashed because it omitted this language. I disagree. The language was not needed in order to charge him with one of the other versions of the crime. Later, Smith objected to the State's instruction that defined the crime, but he focused on the difference between whether Smith actually shot the victim or whether he had only attempted to do so. The victim was shot with only one bullet, but Smith and a codefendant both shot at him. No proof showed which defendant's gun fired the harmful bullet. On two occasions during the instructions conference with the court, counsel said this is "why the indictment is fatally defective," and "that's exactly -- you know, that's what we talked about with the indictment." Though counsel mentioned "recklessly" again, it was just in quoting the statute. He then returned to the question of whether Smith caused an actual injury or only attempted one and "attempt" was not in the indictment. There was no objection that the instruction went beyond the indictment in order to allege recklessness.

¶37. On appeal Smith again argues that the instruction was defective because of the issue of injury, not because of reckless behavior being included. I agree that the concept of aiding and abetting resolves the problem of not knowing whether Smith or a codefendant fired the harmful bullet.

¶38. The motion to quash was validly denied. That means the indictment was not itself defective. The error was not in the indictment but in the State's going beyond the indictment in the jury instructions. Thus Smith needed to object to the instruction on the basis that recklessness should not have been mentioned. He did not do so.

¶39. The evidence permitting an inference of intentional conduct was substantial but circumstantial. Thus I do not find that the failure of the instructions to conform to the indictment in this way to be plain error rising to the denial of a fundamental right of the defendant. The prosecutor probably should not have chosen the inartful words used in the indictment, especially since this entire alternative means of committing the crime was thereby omitted, but Smith was on notice of the crime and the statute. I find that sufficient under plain error analysis and therefore would affirm.

**McMILLIN, C.J., BRIDGES AND COLEMAN, JJ., JOIN THIS SEPARATE OPINION.**